## Maryland Coal and Coke Co. v. Gonzales Coal Mining Co.

*J. K. Johnston*, for rule; *N. B. Spangler* and *Ivan Walker*, contra.

FLEMING, P. J., Jan. 28, 1929.—The defendant has obtained a rule upon the plaintiff to show cause why the above judgment should not be opened and the defendant permitted to defend against the plaintiff's demand.

The plaintiff is a corporation, and for a number of years prior to the happenings in this case had been quite extensively engaged in the bituminous coal fields of central Pennsylvania. At or about the time of the transactions upon which this suit is based, the plaintiff abandoned its activities in the central Pennsylvania field. The defendant is also a corporation, and has been, and still is, engaged in mining and shipping bituminous coal from its operations at or near Karthaus, Clearfield County, Pennsylvania.

In December, 1927, negotiations were had between the plaintiff, through its representative, Harry Gibson, and the defendant, through its president and general manager, O. J. Harm, and its secretary, Walter A. Harm, for the sale by the plaintiff to the defendant of a used mining-machine, known as a Jeffreys 35 *B*. This machine was at the mines in the Osceola District. The price to be paid was originally fixed at $2000, but subsequently, when the machine in question arrived at defendant's mine, it was discovered that the truck was too high for defendant's purposes, whereupon an adjustment was made by which defendant was to purchase such a truck as would be suited to its needs, at its own expense, in consideration of which the plaintiff would allow the defendant the sum of $300 therefor by way of a deduction from the agreed purchase price, making the same $1700 instead of $2000, as originally stated. Upon the basis of this adjustment, the defendant gave to the plaintiff its check for $200 and its note for $1500. This note was dated Dec. 10, 1927, and became due on March 1, 1928. The note was not paid at maturity, and on April 10, 1928, by virtue of the warrant of attorney and confession of judgment therein contained, judgment was entered on said note, to the above number and term, in the sum of $1650, being the face of the note, plus 10 per cent. attorney's commission, according to the tenor of the said note, and with interest from Dec. 10, 1927.

The defendant avers in its petition that the plaintiff agreed that the machine in question would be delivered to the defendant at its operation near Karthaus, Pennsylvania, and that the machine was in "number one" condition and would do the necessary work by way of mining coal, and that it was suitable for cutting a thirty-one-inch vein of coal. The defendant further avers that it paid the cost of transporting the machine to its operations; that when the electric power was turned on the machine would not work and did not have power enough to pull its own weight; that the gearing was worn out and that it would require the expenditure of $256.88 for parts sufficient to put the machine in workable condition.

The plaintiff avers in its answer that it agreed to deliver the machine to defendant's operations, but at the defendant's expense; it denies that plaintiff stated anything in regard to the condition of the machine or that it would do any work other than what its condition, upon inspection, would disclose it to be capable of doing; that the machine was inspected prior to the purchase by Walter A. Harm, secretary of the defendant corporation. In general, plaintiff denies the allegations of defendant's petition.

"An application to open a judgment entered upon a warrant of attorney or judgment note is an equitable proceeding addressed to the discretion of the court, and is to be disposed of in accordance with the principles of equity. . . . It is difficult to lay down the precise measure of proof which should move a chancellor to open a judgment. That he may not so act unless there is more than an oath against oath is a familiar rule in chancery practice. Where there is more than this, and it comes to a question of the weight of the evidence, it is for him to decide on which side the scales incline. If he is in doubt upon this question, or as to the credibility of witnesses, a prudent course would suggest the aid of a jury. Subject to the foregoing, it is proper to say, that if the testimony taken on the rule would be sufficient to justify the submission of the question to a jury, the court may, in its discretion, make an order to open; but if, on the testimony so taken, the court would set aside a verdict for the defendant, the court should refuse to open. This rule provides a reasonable margin for the exercise of the discretion of the court below: . . ." Jenkintown National Bank's Appeal, 124 Pa. 345.

The instant case is concerned with two questions, viz.: (1) Was a warranty given by the plaintiff, either express or implied, as to the condition of the machine in question and its ability to perform? (2) If such a warranty, · either express or implied, is found to have existed, has the defendant waived his rights under such warranty by his subsequent course of dealing with the machine?

As to the giving of the warranty, the testimony is directly contradictory. As related by the defendant and its witnesses, Gibson, the plaintiff's agent, approached Walter A. Harm, secretary of the defendant corporation, stating that the plaintiff was discontinuing operations in central Pennsylvania and that it had the machine in question for sale. Gibson was referred to O. J. Harm as the official having authority to make purchases for the defendant corporation. O. J. Harm was then at his fishing camp and Gibson visited him there. The record fails to disclose any other person present there when the machine and its purchase was discussed. Harm says a warranty was made. Gibson denies the same. Thus far we have merely oath against oath, for the preliminary talk between Gibson and Walter A. Harm cannot be said to incline the scales in favor of the defendant, it being as corroborative of Gibson's testimony—and more directly so—than it is of that of O. J. Harm.

The defendant then sent to plaintiff's operations for the machine and transported it to its own operations. This is denied by defendant, but again we find but oath against oath as to who delivered the machine. According to the testimony of Walter A. Harm, the machine was at defendant's mine for about a week before settlement was made. He further testified that he was present when Gibson requested settlement, and that the machine had not been inspected, but that the check and note were given on Gibson's statement that the machine was in "A number one condition and would cut the coal." This is in corroboration in a small degree of defendant's contention as to a warranty, but not sufficient, in the light of the interest of the witness, to incline the scales toward the defendant. It must be borne in mind that at the time of settlement, according to defendant's testimony, not the slightest effort had been made to inspect the machine. Later and after settlement, defendant testifies, the electric current was applied and the machine would not move, and it was hauled into the shop by mule power, and there it was discovered that the gears were worn out and that the machine was generally in bad shape. It may be true that the machine could not be taken into the mine until the lower truck had been obtained, and that, therefore, it could not be tested as to its coal-cutting ability, but as to these other alleged defects, inspection could have been had before settlement as well as afterward.

It is further testified by O. J. Harm that such a machine was not an immediate necessity at the time it was purchased. "I stated that we would be in the market for one in about three months; that we were now driving centers and would be ready at that time." (Notes of Testimony, page 5.) Mr. Harm, as testified by him, has been in the coal mining business for eighteen years, and is known to the court as one of the most successful and efficient operators in central Pennsylvania. We cannot reconcile, therefore, his failure to inspect, at least superficially, for such an examination should have then revealed the alleged defects now averred in support of this rule, this machine, which he did not need for three months; nor can we understand why he parted with the present use of $200 of the defendant's money as a downpayment and obligated the payment of a further sum and interest by way of a solemn instrument under seal. Such a course, in the light of his recognized business sagacity, indicates more strongly to the mind of the court a desire

to take the machine "as is" rather than a desire to accommodate a corporation, such as the plaintiff, by handing it an obligation and to rely on a warranty to protect his company.

The cost of a new machine of the make and type of the one in question, according to Mr. Askins, the defendant's witness, was, on Dec. 10, 1927, the sum of $3750. The defendant agreed to pay $1700 for this one. Mr. Askins further testified that if the machine in question was put in proper condition, it would be worth from $2200 to $2500. Mr. Harm testified that he has procured the necessary parts at an expense of $434.71 (parts, $409.74; freight, $24.97). This expense added to the $1700 purchase price makes $2134.71, allowing the defendant a margin of $65.29 on Mr. Askins's minimum estimate of value and $365.29 on his maximum estimate of value to apply on the cost of labor in installing the parts. We are not concerned with adequacy of consideration other than as such affects the equitable principles to be applied here.

The testimony of Gibson and other witnesses for the plaintiff is in direct contradiction of defendant's theory. Taken all in all, considering the interest of the several witnesses on both sides, we cannot, in conscience, see more than oath against oath in this case.

But let us suppose, for the purpose of further consideration, that a breach of promise or warranty existed and instead of the doctrine of *caveat emptor* applying here that the doctrine of *caveat venditor* applies. Has the defendant met the obligation imposed upon it by law? This machine was delivered to the defendant. There is no denial of that. A week elapsed before the giving of the check and note. Some time afterward, the testimony of the defendant fails to show exactly when, the machine was inspected and is alleged to have been found to be defective.

Section 47, paragraph 1, of the Sales Act of May 19, 1915, P. L. 543, 556, provides: "Where goods are delivered to the buyer which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." The want of conformity in the instant case was that the machine was not in first class condition.

But even if this alleged lack of conformity to the contract actually existed, defendant has not shown that, upon discovery, it promptly tendered a delivery back or that it gave notice within a reasonable time. This is essential to avoid liability: American W. T. Co. *v.* Reed Manuf. Co., 18 Pa. Superior Ct. 24. An averment of notice is contained in the petition, but the date of such notice is not given, nor is there any proof adduced to show us that defendant fulfilled its obligations in this respect within a reasonable time.

Section 48 of the Sales Act of May 19, 1915, P. L. 543, 555, provides as follows: "The buyer is deemed to have accepted the goods . . . when the goods have been delivered to him, . . . or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." There has been no proof adduced here that within a reasonable time the defendant intimated to the plaintiff that it had rejected the machine. The omission of such proof cannot be supplied by possible inferences from the stated facts: Wright *v.* General Carbonic Co., 271 Pa. 332. Under such circumstances as exist here, where no proof of notice of rejection has been adduced, the question as to a reasonable time is a question of law for the court: Wright *v.* General Carbonic Co., 271 Pa. 332. With the record wholly silent and the burden to show compliance with the statute upon the defendant, we cannot but find adversely to it.

Section 49 of the Sales Act of May 19, 1915, P. L. 543, 557, provides: "But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty, within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor."

It is quite evident, in the light of defendant's complete failure to show compliance with the statute, that even if it be true, as contended by defendant, that a warranty was given by the plaintiff to the defendant, the defendant has estopped itself from using such warranty to evade payment in this case.

And now, Jan. 28, 1929, the rule to show cause why judgment should not be opened and the defendant let into a defense is discharged.

From S. D. Gettig, Bellefonte, Pa.